AO 91 (Rev. 02/09) Criminal Complaint

## United States District Court
### for the
### Western District of New York

| | |
|---|---|
| United States of America<br>v.<br>**ORLANDO JUSTICE,**<br>*Defendant* | Case No. 24-MJ- 4138 |

## CRIMINAL COMPLAINT

I, <u>Andrew Jasie, Task Force Officer, Federal Bureau of Investigations</u>, the complainant in this case, state that the following is true to the best of my knowledge and belief:

Beginning on or about November 23, 2024, through and including on or about November 26, 2024, in the Western District of New York and elsewhere, the defendant, ORLANDO JUSTICE:

> did knowingly and willfully transmit in interstate and foreign commerce communications that contained threats to injure Victim 1,

all in violation of Title 18, United States Code, Section 875(c); and

> did, with the intent to injure, harass, and intimidate, use facilities of interstate and foreign commerce, including an interactive computer service, an electronic communication service, and an electronic communications system of interstate commerce, to engage in a course of conduct that placed Victim 1 in reasonable fear of serious bodily injury to a Victim 1 and his immediate family members and caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to Victim 1.

all in violation of Title 18, United States Code, Section 2261A(2)(A) and (B).

This Criminal Complaint is based on these facts:

    **SEE ATTACHED AFFIDAVIT OF TFO Andrew Jasie**

☒ Continued on the attached sheet.

_____
*Complainant's signature*
Andrew Jasie, TFO, FBI
*Printed name and title*

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature attested to me as true and accurate telephonically pursuant to Fed.R.Crim. P. 4.1 and 4(d) on:

Date: __November 26, 2024__

_____
*Judge's signature*

HON. MARIAN W. PAYSON
UNITED STATES MAGISTRATE JUDGE

City and State: __Rochester, New York__

2

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK   )
COUNTY OF MONROE  )   ss:
CITY OF ROCHESTER  )

I, **Andrew J. Jasie**, being duly sworn, depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Task Force Officer with the Federal Bureau of Investigation (FBI) assigned to the Rochester, New York Resident Agency. I have been assigned as a Task Force Officer with the FBI since December of 2014. I have been employed by the New York State Police for over twenty-five years and assigned as an Investigator for over twenty years. As part of my professional experience, I have participated in investigations involving gangs, bank robberies, Hobbs Act robberies, fugitives, and illegal drug trafficking. As an FBI Task Force Officer, I am charged with the duty of investigating violations of the laws of the United States, collecting evidence in cases in which the United States is or may be a party in interest, and performing other duties imposed by law.

2.      This affidavit is submitted in support of an application for a complaint charging ORLANDO JUSTICE ("JUSTICE") with violating Title 18, United States Code, Section 875(c) (Transmission of Threats in Interstate Commerce) and Title 18, United States Code, Section 2261A(2)(A) and (b) (Stalking) (hereinafter, collectively the "TARGET OFFENSES").

3.      This affidavit is based on my investigation and on information provided to me by members of the law enforcement community.

1

4. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning the investigation. Instead, I have set forth only the facts which I believe are sufficient to establish probable cause to conclude that JUSTICE committed the TARGET OFFENSES.

## PROBABLE CAUSE

5. Victim 1 is an officer with the Rochester Police Department.

6. On or about November 23, 2024, Victim 1 participated in the arrest of JUSTICE at the RTS Bus Terminal, located at 60 St. Paul St., for trespass and resisting arrest. JUSTICE was intoxicated at the time of arrest and was transported to Strong Memorial Hospital. While at Strong Memorial Hospital, JUSTICE threatened the arresting officers, including Victim 1, spit at them, and told officers that he would find the officers and come to their houses. JUSTICE specifically told Victim 1 that he would find where he lived and fight/hurt him.

7. JUSTICE was charged with Trespassing and Resisting Arrest and issued an appearance ticket.

8. The following day, on or about November 24, 2024, Victim 1 received a series of phone calls on his personal cell phone from an unknown number:

- At approximately 10:30 AM, Victim 1 received a call from an unknown number and did not answer;

- At approximately 10:31 AM, Victim 1 received a second call from an unknown number and did not answer; and

- At approximately 10:46 AM, Victim 1 received a third call from an unknown number and did not answer.

9. At approximately 10:49 AM, Victim 1 received a fourth call from the unknown number and answered. JUSTICE identified himself as the caller, and Victim 1 recognized JUSTICE's voice. JUSTICE told Victim 1, "I told you that I would find you," and that he knew Victim 1's personal information and where he lived. JUSTICE then recited Victim 1's home address. JUSTICE told Victim 1 he "messed with the wrong one" and that JUSTICE was "a different breed of human." Victim 1 told JUSTICE not to call him again and hung up the phone.

10. A few minutes later, at approximately 10:51 AM, Victim 1 received a FaceTime video call from Orlando14608@gmail.com.

11. FaceTime is an Apple application that allows users to make video or audio calls over the internet using an Apple device like an iPhone, iPad, or Mac. Apple does not have any servers located in the State of New York. As such, when someone places a FaceTime call from New York, the call crosses state lines, even if the recipient of the call is also located in New York State.

12. Victim 1 answered the FaceTime call and recognized JUSTICE as the caller. JUSTICE demanded that Victim 1 give him the names of the other RPD officers who were present during JUSTICE's arrest on November 23, 2024. JUSTICE threatened to go to Victim 1's home, continue calling Victim 1, and encourage his friends to do the same. JUSTICE told Victim 1 that he will go to his house and continue to call. The Facetime video

call continued for a few minutes before Victim 1 told JUSTICE not to contact him and ended the call.

13. Victim 1 reported this incident to the Greece Police Department (GPD) and filed charges with GPD to arrest JUSTICE for Aggravated Harassment and Stalking.

14. Later that day, at approximately 4:00 PM, Victim 1 received another call on his personal cell phone from an unknown number. Victim 1 did not answer this call.

15. A few hours later, at approximately 8:00 PM, Victim 1 received another Facetime video call from Orlando14608@gmail.com. Around that time, GPD and RPD had gone to JUSTICE's residence in an unsuccessful attempt to arrest him for aggravated harassment.

16. Victim 1 answered the Facetime video call from Orlando14608@gmail.com and recognized JUSTICE as the caller. JUSTICE asked Victim 1, "Why your friends come to my house?" Victim 1 asked JUSTICE who he was (Victim 1 knew it was JUSTICE but was attempting to get JUSTICE to confirm his identity), and JUSTICE responded that Victim 1 knew who he was and gave the name "John Doe."[1]

17. Victim 1 ended the Facetime call by once again telling JUSTICE not to call him.

18. A few minutes later, at approximately 8:36 PM, JUSTICE called 911 and asked to speak with a sergeant. An RPD sergeant followed up by calling JUSTICE. During this

---

[1] When JUSTICE was arrested on November 23rd, he refused to provide officers with his pedigree information and was referred to as "John Doe" until he finally disclosed his identity.

4

call, JUSTICE falsely claimed Victim 1 was contacting JUSTICE and harassing him. JUSTICE asked to file a complaint against Victim 1 for use of excessive force.

19.     The RPD sergeant, who was unfamiliar with JUSTICE's prior conduct and interactions with Victim 1, offered to send officers to take JUSTICE's complaint. JUSTICE refused to meet with the officers and insisted he would only meet with the sergeant one-on-one.

20.     The next day, on or about November 25, 2024, at approximately 1:59 PM, Victim 1 received a text message from JUSTICE. The conversation went as follows:

| | |
|---|---|
| JUSTICE: | Yo |
| Victim 1: | Who this? |
| JUSTICE: | [Victim 1's name, mispelled] |
| Victim 1: | Who is this? |
| JUSTICE: | [Victim 1's name, mispelled] |
| Victim 1: | Not familiar<br>?<br>Can I help you? |
| JUSTICE: | Lies boy your name shows up<br>What's good |
| Victim 1: | Who is this? And what do you want? |
| JUSTICE: | Don't get scared now |

21.     JUSTICE's conduct has caused Victim 1 to fear that JUSTICE will cause serious bodily injury to himself and/or his family.

## CONCLUSION

22. Based on the foregoing, I submit that there is probable cause to believe that JUSTICE committed the TARGET OFFENSES.

*Andrew J. Jasie*
FBI Task Force Officer

Affidavit submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this __26__ day of November 2024

*Marian W. Payson*
HON. MARIAN W. PAYSON
United States Magistrate Judge